JOHNNIE L. SCOTT v. REUBEN C. SHACKELFORD AND WIFE, HELEN SHACKELFORD.

(Filed 30 March, 1955.)

**1. Appeal and Error § 40d—**

In a trial by the court under agreement of the parties, motions for nonsuit and to set aside the findings of fact on the ground that the findings are not supported by evidence require a determination only of whether there is competent evidence in the record sufficient to support those findings which are necessary to sustain the court's conclusions of law.

**2. Dedication § 4—Evidence held sufficient to sustain finding of acceptance by public of dedication of street.**

A municipality was established by Act of Assembly which recited that fifty acres of land had been laid out in the town in half-acre lots with convenient streets. Plaintiffs introduced in evidence a map recorded some sixty years thereafter showing the alleyway or street in suit. Plaintiffs' testimony tended to show circumstances from which it could be inferred that no streets were laid out in the interval between the enactment of the statute and the recording of the map and that the map showed the streets and alleys in accordance with the plan in existence at the time of the enactment of the statute, and further that the street or alley in suit had been used as a public way for some sixty-one years prior to the institution of the action. *Held:* There is some evidence to support the finding that the alley or street in question was a part of the original plan of the town and constituted a public alleyway, and judgment that defendant had no right to obstruct same by virtue of a deed embracing the alley which was executed less than four years prior to the institution of the action, is affirmed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Grady, E. J.,* October 1954 Term Superior Court, PASQUOTANK.

Civil action for an injunction requiring defendants (1) to remove obstructions placed by them in such a way as to obstruct and close a public street or alleyway in the Town of Nixonton, Pasquotank County; and (2) to refrain hereafter from further interfering with the use by the plaintiff and the public of the street or alleyway.

Plaintiff's complaint contains allegations sufficient, if proved to warrant the court in finding the street or alleyway is a public street and to entitle him to the relief demanded.

The defendants, by answer, entered a general denial of all the material allegations of the complaint. A jury trial was waived, whereupon Judge Grady heard the case as judge and jury.

The plaintiff introduced Deed Book M. M., Page 39, the record of an agreement entered into 28 October, 1856, between John H. Kenyon and Timothy Morgan, fixing the boundary lines to their adjoining properties. A map of the land was made at the time of the agreement. It is recorded in Division B, page 153, Pasquotank Registry. This map shows the lane, street or alley all the way from Main, or Elm Street to Little River. The alley is the eastern boundary of the Morgan property. The Kenyon land is the western boundary of the Morgan lot. The plaintiff claims through Timothy Morgan and introduced *mesne* conveyances from Morgan to himself. The *mesne* conveyances refer to the lane or alley as the eastern boundary of the lot.

The plaintiff offered a number of witnesses who had lived in and near Nixonton and were familiar with the town for a period from 54 to 61 years. They testified the street or alley in question was considered and used as a public street for the entire period. One witness testified the lane bore the general reputation of being a public road for 60 years. Another witness testified that the lane was open and used by the public the entire distance from Main, or Elm Street, all the way to Little River, and "everybody took it for granted that the lane was a public street." There was evidence at one time the post office was located on this street or alley. There was no evidence of public maintenance and no evidence as to how, if at all, it was maintained. There was evidence the defendants' deed, executed in 1951, included the alley. This deed contained the following as a part of the description of the lot conveyed. "The foregoing description includes the driveway on the west side of said lot leading from the said Elm Street to the residence of said property and to Little River." The defendants introduced deeds from their predecessors in title to their lot going back to 1917. The defendants also introduced evidence that the alley or lane had not been maintained as a public way since 1921. One of defendants' witnesses testified: "I know the Shackelford property

(now defendants' lot); that was 61 years ago. There was a post office in the building on the property. My father drove the mail, it was a star route, every other day. It was my job to go up to Mr. White's and get the mail back every other morning. I did that for three or four years. I went to the driveway that is there now. It is approximately the same location as it was 61 years ago. To enter the property I went in off of Main Street, or Elm Street and came out the same way. I used to walk up there after the mail. It was fenced on both sides of this street or alley, whichever you call it, right on down to the river."

At the close of the evidence the defendants made timely motions for judgment of nonsuit, which were overruled. The court made extensive findings of fact. However, we shall quote only the substance of the determinative findings:

1. "The only inference that can be drawn from the facts as they clearly appear is that the alleyway or street was a part of the original plan of the Town of Nixonton." . . . "That it was a public alley, that it has had the reputation of such from time immemorial . . . the measurements show it was 16 feet wide."

2. "That there is a 16-foot alleyway lying between the lands of the plaintiff and the lands of the defendants and runs from Main or Elm Street to Little River, which alley is designated on the map hereto attached by the letters A-B-C-D-A." The court concluded as a matter of law "that the defendants have no right, title or interest in said alley or street, except to use the same as a public convenience."

Upon the findings of fact and conclusions of law based thereon, the court ordered the removal of all obstructions interfering with the public use of the alley, and forever restraining the defendants from interfering in any way with the plaintiff's rights respecting the lane, including their right to use the same at all times as a public alley or street.

The defendants moved to strike out each finding of fact in each paragraph. Exceptions were also taken to each of the stated conclusions of law. All motions were denied, to which the defendants excepted. Judgment was signed as indicated, from which the defendants appealed.

*Jennette & Pearson, by J. W. Jennette, for plaintiff, appellee.*
*LeRoy & Goodwin, by J. C. Goodwin, Partner, for defendants, appellants.*

HIGGINS, J. The defendants' evidence has not been summarized and need not be considered in the determination of the questions presented by this appeal. The motions for nonsuit and to set aside the findings of fact and reverse the conclusions of law on the ground the findings are not supported by the evidence, lead us to inquire whether there is competent

evidence in the record to support, not necessarily all the findings, but sufficient of them to warrant the conclusion that the street or alley is a public way. If such evidence appears in the record, we are bound by the findings and the judgment must be affirmed.

Under the early decisions of this Court the problem here presented would be easy to solve. In early times, when the country was thinly populated, when lands were of relatively little value, when public funds for road and street construction and maintenance were simply not available, when proceedings, records, and plats showing the authorization and location of streets and highways were ineptly drawn,—sometimes recorded and sometimes not—when the method of keeping and preserving records consisted in placing longhand papers in pigeonholes in some wooden cabinet, stored away in a wooden courthouse or town meeting-house, it was both practical and sensible for the Court to hold as it did in *S. v. Marble,* 26 N.C. 318, "When a road has been used by the public as a public road for 20 years and there is no evidence as to how this user commenced, a presumption in law arises that the road has been, by due course of law, and by the proper tribunal laid off and established as a public road or highway." Likewise, in *S. v. Cardwell,* 44 N.C. 245, this Court said: "Furthermore, the use of a road as a public highway for twenty years will authorize a jury to presume its dedication to that purpose." *Woolard v. McCullough,* 23 N.C. 432; *Tarkington v. McRea,* 47 N.C. 48; *Askew v. Wynne,* 52 N.C. 22; *Tise v. Whitaker,* 146 N.C. 374."

By admission of counsel for the defendants as recited in Judge Grady's finding of fact, the lane or alley in question is a part of a fifty-acre tract of land described in the Act of Assembly of North Carolina, Chapter XVI, Volume 25, Public Laws 1789-1790, and reported in Volume XXV, State Records of North Carolina, the pertinent parts of which are as follows:

"An Act For Establishing A Town On The Lands Formerly Belonging To Zachariah Nixon, Lying On The North East Side Of Little River, In Pasquotank County.

"I. Whereas, it hath been represented to the Assembly, that in the year of our Lord one thousand seven hundred and forty-six, one hundred and sixty-one and a half acres of land were purchased for a town and commons, fifty acres of which hath been laid out in half acre lots, with convenient streets; that there are now upwards of twenty habitable houses erected thereon, and upwards of seventy inhabitants; and the same might soon be improved, if it was erected into a town by lawful authority.

"II. Be it therefore enacted, by the Governor, Council, and Assembly, and by the authority of the same, That the said one hundred and sixty-one and a half acres of land, be, and the same is hereby constituted, erected

and established a town, and a town commons, and shall be called by the name of Nixon's town."

It is of significance the Act recites fifty acres "hath been laid out in one-half-acre lots with convenient streets." According to history, Nixonton, or Nixontown, was the county seat of Pasquotank County from 1785-1800. At the time of the Act of Assembly above referred to, the town was the county seat and the fifty acres seems to have been the settled or built up part of the town. The title to the Act states the lands lie on the North East side of Little River. The record indicates Little River is a navigable stream, so that in 1789-1790, it is not difficult to understand why streets leading to the river would be of importance, for the navigable rivers of that section in that day were the highways of the time. It is of significance also, the plaintiff's lot comprises one-half acre, and in the record of all conveyances connecting his title with Timothy Morgan in 1856, the description is always the same—one-half acre. The plaintiff does not attempt to carry his title beyond 1856. In every conveyance from that date the eastern boundary of his one-half acre lot is given as the lane or alley from Main Street to Little River.

Soon after the Act of Assembly in 1789-1790, the county seat was moved from Nixonton to Elizabeth City. After Nixonton ceased to be the county seat in 1800, it is not unreasonable to conclude the growth of the town was over and there no longer existed reasons for laying out streets. Likewise, it is not unreasonable to conclude such streets as were laid out in that remote and hazy past are traceable to that time of promise and growth—while it was the county seat. No reason appears why a new street or alleyway should be laid out between 1800 and 1856, in which year the map shows the street in question.

The map recorded in Division Record Book B, page 153, shows Main, or Elm Street, and the alley or lane connecting that street with Little River. Further west, another street is shown to intersect Main or Elm Street at exactly the same angle as the alley in question and this street also runs exactly parallel to the alley or street here in question from Main Street to Little River. The map is attached to the judgment and is a part of the record on appeal.

The plaintiff offered evidence of witnesses who had known the property for a period going back as far as 61 years. The substance of the testimony is that during all the time the witnesses had known the property, the lane was used as a public street and it had the general reputation of being a public road. At one time the post office was located on this alley and, further towards the river, there was a blacksmith shop; that the alley was used by the public as a means of access to the river. One of defendants' witnesses testified that part of the street or alley was used as a star

mail route; that it was fenced on both sides. He had been familiar with it for more than 60 years.

There can be no doubt but that under the old decisions of this Court the evidence of the use of the alley by the public for the time shown by the plaintiff's evidence would be amply sufficient to sustain the findings and judgment in this case. Under the later decisions, we think the facts offered, though somewhat inconclusive as proof of acceptance, constitute *some* evidence and as such will support Judge Grady's findings.

However, as the State and the towns developed, and larger and larger sums of money became available for highways and streets, they were surveyed with mathematical exactness. They were authorized by carefully prepared proceedings. Records of surveys and plans showing the exact location were made and were available at every courthouse and town hall. The authority for the location and construction can be ascertained without difficulty. As a consequence, the recent decisions of this Court are in harmony with and recognize the change in conditions. In an opinion by *Barnhill, J.,* now *C. J.,* in the case of *Chesson v. Jordan,* 224 N.C. 289, 29 S.E. 2d 906, the Court clearly states the modern view: "According to the current of decisions in this Court, there can be in this State no public road or highway unless it be one either established by public authorities in a proper proceeding regularly instituted before the proper tribunal; or generally used by the public and *over which the public authorities have assumed control* for a period of twenty years or more; or dedicated to the public by the owner of the soil with the sanction of the authorities and *for the maintenance and operation of which they are responsible."* (Emphasis added.)

Long after the time the alley in question here had been in use according to the plaintiff's evidence, maintenance of streets and highways generally consisted of the draining or filling up of mudholes, often by the owner of the adjacent property. Then, the use alone was sufficient to establish the right. Then, no provision or facilities were provided for maintenance. Now, it is not enough for the public to use the streets, highways or alleys for twenty years. The public authorities must assert control over them.

If the street or alley in question here was accepted by the Assembly in 1789-1790, as seems probable, it became a public way and its use as such is shown by the map recorded 99 years ago. It has been recognized in all the deeds constituting plaintiff's chain of title. It has been used by the public and has borne the general reputation of being a public way for 61 years.

When once accepted, the acceptance cannot be withdrawn or the character of a public street destroyed, except by abandonment or by adverse user for a period of 20 years. The doctrine of abandonment and adverse

user is fully discussed in an opinion by *Denny, J.,* in the case of *Lee v. Walker,* 234 N.C. 687, 68 S.E. 2d 664.

The defendants have a deed for the Shackelford lot which includes in the description of the property conveyed, the alley in question. This deed was executed to them in 1951. From a review of the record, we conclude there was sufficient evidence to warrant Judge Grady in finding the street or alley as shown by the map is a public street which the defendants have shown no right to obstruct.

The judgment of the Superior Court of Pasquotank County is
Affirmed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.