PAUL WOFFORD AND WIFE, LUCILLE PASCHAL WOFFORD, FRED M. PARRISH AND WIFE, MARY ANNE PASCHAL PARRISH, AND HENSEL WOOD PRODUCTS v. THE NORTH CAROLINA STATE HIGHWAY COMMISSION.

(Filed 24 February, 1965.)

1. **Municipal Corporations § 28—**

    The owner of property abutting a street has a right in common with all other citizens to the free use of the street subject to the rules, regulations, restrictions and limitations promulgated pursuant to the police power of the State, and a private easement appurtenant entitling him to reasonable access to the street or highway his property abuts.

2. **Same; Highways § 5—**

    The General Assembly has authorized the Highway Commission to construct and maintain limited access highways in both rural and urban areas

in the exercise of the police power, and has authorized the Commission and the governing bodies of cities and towns to enter into agreements with each other respecting the maintenance and use of controlled access streets within their respective jurisdictions. G.S. 136-89.48 *et seq.*

**3. Same; Eminent Domain § 2—**

Where a limited access highway is constructed across a municipal street in accordance with statutory authority, the owners of property abutting the street who are thus placed in a *cul-de-sac* and deprived of access to one of the adjacent intersecting streets are not entitled to compensation for the diminution in value of their property resulting from such limitation of access, there being no taking of their property or any interference with their easement of reasonable access to the butting street. Art. I, § 17 of the Constitution of North Carolina, 14th Amendment to the Constitution of the United States.

**4. Same—**

The construction of a limited access highway across a city street so as to place property along the street in a *cul-de-sac*, does not result in the taking of any property right from the owners along the abutting street, since a property owner has no vested right to have traffic pass his property, and his inconvenience from circuity of travel made necessary to reach streets in other areas of the city is different only in degree and not in kind with that suffered by the public generally. This result is not affected by the fact that the city acquired the street by dedication.

**5. Dedication § 2—**

The sale of lots in a subdivision with reference to a map showing streets gives the purchaser of each lot the right to have the streets kept open insofar as necessary to afford him reasonable ingress or egress to his lot, but as to the public the selling of the lots with reference to a map is only an offer to dedicate, and neither burdens nor benefits may be imposed on the public unless in some proper way it accepts the dedication.

**6. Same; Municipal Corporations § 28—**

The fact that a city acquires streets by acceptance of the offer of dedication made by the owner of a subdivision in selling lots with reference to a map showing such streets does not limit the city's control over the streets, or affect its authority to close the streets upon compliance with statutory procedure, G.S. 153-9(17), G.S. 160-200(11), and the purchaser of a lot abutting a public street, whatever the origin of the street, takes title subject to the authority of the city to control and limit its use in the valid exercise of the police power.

PARKER, J., dissenting.

APPEAL by plaintiffs from *Olive, E. J.*, August 31, 1964, Non-jury Session of FORSYTH. Docketed and argued as No. 397 at the Fall Term, 1964.

Proceedings to recover damages for the alleged appropriation of property for highway purposes.

Individual plaintiffs own an 8.1-acre tract of land in the city of Winston-Salem, a portion of which they leased to corporate plaintiff. The property is in an industrial zone, and corporate plaintiff operates a wood processing plant thereon. The land lies to the south of and abuts 21st Street, which intersects Ivy Avenue a short distance to the west of the property, and prior to May 1963 intersected Liberty Street about 200 feet to the east of the property. Prior to May 1963 "a large percentage of all traffic going to and from plaintiffs' property was by way of the Liberty Street intersection." Liberty Street is "one of the main arteries of travel in the City of Winston-Salem," and prior to May 1963 "was the main street connecting 21st Street to the business and residential areas to the north, east and south of plaintiffs' property, and to the general system of streets and highways in the City of Winston-Salem." In May 1963 the defendant, State Highway Commission, began construction of highway project 8.17378, which is commonly called the North-South Expressway through the city of Winston-Salem, and is designated U.S. Highway 52. The Expressway crosses 21st Street between plaintiffs' property and Liberty Street.. Defendant caused 21st Street to be "blocked, cut off and closed" from Liberty Street by a dirt fill made in the course of construction of the Expressway. Thus 21st Street is blocked and terminated about 100 feet east of plaintiffs' property, creating a *cul-de-sac.* The closest access from plaintiffs' property to Liberty Street is now by way of 21st Street, Ivy Avenue and 25th Street. The intersection of 25th and Liberty Streets is four blocks north of 21st Street.

Plaintiffs allege and contend they had "a public and private" easement in 21st Street in both directions, the blocking of 21st Street has damaged their property and amounts to a taking without compensation. Defendant avers and contends that plaintiffs have suffered no compensable damage.

The facts, as above summarized, were stipulated. The trial court ruled that the blocking of 21st Street "did not constitute an appropriation of plaintiffs' property or an interest in plaintiffs' property," and that plaintiffs suffered no compensable damage. Judgment was entered dismissing the proceedings.

*Attorney General Bruton, Assistant Attorney General Lewis, Trial Attorney Rosser and Spry, Hamrick and Doughton for the State Highway Commission.*

*Deal, Hutchins and Minor and Edwin T. Pullen for plaintiffs.*

MOORE, J.   The question is whether the closing of 21st Street about 100 feet east of plaintiffs' property, so as to leave it on a *cul-de-sac,*

constitutes an appropriation of a property right of plaintiffs for which they are entitled to compensation from the State.

The same legal question, on similar facts, arose in *Hiatt v. Greensboro*, 201 N.C. 515, 160 S.E. 748 (1931). In holding that the property owner had suffered compensable damage this Court said: "He has an easement in the street, which is appurtenant to his lot. This easement is his private property of which he cannot be deprived even for the use of the public, without just compensation. . . . 'An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether the fee of the highway is in him or not. These rights are property of which he may not be deprived without his consent, except upon full compensation and by due process of law. They include . . . the right to have the highway kept open as a thoroughfare to the whole community for the purpose of travel . . .' 29 C.J. p., 547." Further: "The plaintiffs in the instant case have suffered special damages in the depreciation of the value of their property resulting from the deprivation of their right of access to their property from the northern section of the city and from the stopping of all travel by their property from the southern section of the city. They have been deprived of rights which differ in kind and degree from the rights of the public." This decision, at the time of its rendition, was in accord with the weight of authority in other jurisdictions. 49 A.L.R. 351; 93 A.L.R. 642.

The *cul-de-sac* principle was again presented to this Court, this time involving rural property, in Snow v. Highway Commission, 262 N.C. 169, 136 S.E. 2d 678 (1964). There it was held that the damages were not compensable. The rationale of that decision is fully set out in the opinion and a detailed repetition here would only overburden the Reports. We are paraphrasing the opinion as follows: To entitle the landowner to damages, he must show that land has been taken or physically damaged, or that some easement or right appurtenant to the land has been taken or interferred with. The landowner has an easement consisting of the right of reasonable access to the particular highway on which his land abuts. He has no constitutional right to have anyone pass by his premises at all; highways are built and maintained for public necessity, convenience and safety in travel and not for the enhancement of property along the route. An abutting landowner is not entitled to compensation because of circuity of travel to and from his property; such inconvenience is held to be no different in kind, but merely in degree, from that sustained by the general public, and is *damnum absque injuria*. When the Highway Commission acts in the

interest of public safety, convenience and general welfare, in designating highways as controlled-access highways, its action is the exercise of the police power of the State; the impairment of the value of property by the exercise of police power, where property itself is not taken, does not entitle the owner to compensation. (See the opinion in *Snow* for citation of authorities.)

The *cul-de-sac* principle (followed in *Hiatt*) has been generally limited to property abutting the streets in cities and towns. *Snow v. Highway Commission, supra.* The different treatment accorded owners of rural property abutting a road and the owner of urban property abutting a street has been held to be unsound in well-reasoned recent opinions. *Tift County v. Smith,* 131 S.E. 2d 527 (Ga. 1963); *State v. Silva,* 378 P. 2d 595 (N.M. 1963); *Warren v. State Highway Commission,* 93 N.W. 2d 60 (Iowa 1958); *Department of Highways v. Jackson,* 302 S.W. 2d 373 (Ky. 1957). Weighing the factors in the light of modern conditions, there is no reason to distinguish between rural and urban property on the question under consideration.

As stated in *Hiatt,* the owner of land abutting a street has two distinct rights, (1) a public right which he enjoys in common with all other citizens, and (2) a private right which arises from his ownership of property contiguous to a street. All citizens have right to the free use of a street or public way subject to the rules, regulations, restrictions and limitations promulgated pursuant to the police power of the State; this right the owner of land abutting the street or public way has in common with the public. Where a *cul-de-sac* is created, or the movement of traffic has been limited to one direction, the landowner's right to use the street is no more restricted than is that of other citizens making use thereof, and the landowner has no constitutional right to have others pass his premises. *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732. The restriction upon the landowner and the restriction upon the public generally, in the use of the street for travel, is no different in kind, but merely in degree. A property owner is not entitled to compensation for mere circuity of travel. Absolute equality of convenience cannot be achieved, and those who purchase and occupy property in the proximity of public roads or streets do so with notice that they may be changed as demanded by the public interest. *Snow v. Highway Commission, supra; Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 619; *Barnes v. Highway Commission, supra; Sanders v. Smithfield,* 221 N.C. 166, 19 S.E. 2d 630; *Mosteller v. R. R.,* 220 N.C. 275, 17 S.E. 2d 133. The private right of the owner of land abutting a street or highway is an easement appurtenant to the land, consisting of the right of reasonable access to the particular street or highway which his property abuts. *Snow v. Highway Com-*

*mission, supra; Moses v. Highway Commission, supra; Abdalla v. Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81; *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129. In the instant case, no part of plaintiffs' land was taken or physically injured. Their right of reasonable access to 21st Street has not been appropriated, limited or interfered with.

In final analysis, plaintiffs seek to recover damages for the alleged impairment of the value of their property resulting from the obstruction of 21st Street 100 feet to the east of the property. Such damage is not compensable. The General Assembly has found, determined and declared that controlled-access highways are necessary for the preservation of the public peace, health and safety, the promotion of the general welfare, the improvement and development of transportation facilities in the state, the elimination of hazards at grade intersections, and other related purposes. G.S. 136-89.53. When the Highway Commission acts in the interest of public safety, convenience and general welfare, in designating highways as controlled-access highways, its action is the exercise of the police power of the State. And the impairment of the value of property by the exercise of police power, where property itself is not taken, does not entitle the owner to compensation. *Barnes v. Highway Commission, supra; Nick v. State Highway Commission,* 109 N.W. 2d 71 (Wis. 1961). If plaintiffs were permitted to recover for impairment of property value, because of the circuity of travel thereto and therefrom and the dwindling of traffic by their property, resulting from the street obstruction, practically every property owner in a town could recover for the same reasons when the Highway Commission constructs a by-pass to expedite traffic. *Moses v. Highway Commission, supra.*

Where the State has authorized the construction of a barricade across a street, thereby closing it to vehicular traffic in one direction, the owner of land abutting the street on the *cul-de-sac* thus created has not been deprived of his property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, though the value of his property has been impaired and the State has not compensated him for such loss of value. *Meyer v. Richmond,* 172 U.S. 82. In North Carolina such action by the State, in the exercise of its police power, does not violate Article I, section 17, of the State Constitution. *Barnes v. Highway Commission, supra.* ". . . such questions must be for the final determination of the state court. It has authority to declare that the abutting land owner has no easement of any kind over the abutting street; it may determine that he has a limited easement; or it may determine that he has an absolute and unqualified easement." *Sauer v. City of New York,* 206 U.S. 536.

*Hiatt v. Greensboro, supra,* is expressly overruled insofar as it is in conflict with this opinion.

Plaintiffs contend that the instant case includes and affects a property right not involved in *Hiatt.* It is asserted, and defendant does not deny, that plaintiffs' land and 21st Street, from the Ivy Avenue intersection to the Liberty Street intersection, are parts of a tract of land which was subdivided by the owner into streets and lots, a map of the subdivision was made and recorded, lots (including plaintiffs') were sold with respect to the map, and 21st Street is shown on the map. Though the record is not clear and specific as to such subdivision, we accept the assertion as true for the purposes of the appeal. Our inquiry is whether the fact that plaintiffs' land originated in a subdivision gives its owners a superior right of easement in the streets and thereby distinguishes it from lots having a different origin, so far as the State and its agencies are concerned.

As a general proposition, where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into subdivisions of streets and lots, such streets become dedicated to public use, and the purchaser of the lot or lots acquires the right to have all and each of the streets kept open. *Steadman v. Pinetops,* 251 N.C. 509, 112 S. E. 2d 102; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898; *Foster v. Atwater,* 226 N.C. 472, 38 S.E. 2d 316; *Conrad v. Land Company,* 126 N.C. 776, 36 S.E. 282. The right of a purchaser with respect to the streets of the subdivision is in the nature of an easement appurtenant to his lot. *Realty Company v. Hobbs,* 261 N.C. 414, 135 S.E. 2d 30. This right of easement is not absolute; it extends only to streets or portions of streets of the subdivision necessary to afford convenient ingress or egress to the lot of the purchaser. Under certain circumstances the seller-dedicator or other lot owners may abandon and close a street or a portion of a street. As to the purchaser, opposing such closing, the question is whether the street is reasonably necessary for the use of his lot. G.S. 136-96; *Janicki v. Lorek,* 255 N.C. 53, 120 S.E. 2d 413; *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458; *Rowe v. Durham,* 235 N.C. 158, 69 S.E. 2d 171; *Russell v. Coggin,* 232 N.C. 674, 62 S.E. 2d 70; *Sheets v. Walsh,* 217 N.C. 32, 6 S.E. 2d 817.

The streets of a subdivision are not dedicated to the public merely by reason of the subdivision of the land and the recordation of a map thereof. This is only an offer to dedicate; dedication to the public is complete only when the offer is accepted by the responsible public authority, and neither the burdens nor benefits with attendant duties may be imposed on the public unless in some proper way it has consented to accept and assume them. *Owens v. Elliott,* 258 N.C. 314, 128 S.E. 2d

583; *Steadman v. Pinetops, supra; Lee v. Walker,* 234 N.C. 687, 68 S.E. 2d 664. The offer to the public may be revoked at any time before acceptance; but this does not affect the rights of a lot owner as against the seller-dedicator and other lot owners. *Janicki v. Lorek, supra; Rowe v. Durham, supra; Irwin v. Charlotte,* 193 N.C. 109, 136 S.E. 368. A city or town may in its discretion accept or reject an offer of dedication; it has the right to determine where its streets shall be located. *Steadman v. Pinetops, supra; Lee v. Walker, supra.* It may accept a part of a street and determine the width of the street, and the width need not conform to the offer of dedication. *Sugg v. Greenville,* 169 N.C. 606, 86 S.E. 695. The duty of a city or town to the owner of a lot in a subdivision is not the same as that of the seller-dedicator and his assigns.

With respect to the rights of the owner of a lot abutting a street, as against the city, the fact that the lot is one of a subdivision rather than of some other origin is, so far as the instant case is concerned, a distinction without a difference. Whether a street lies in a subdivision or is of other origin, the city may close all or part of it upon compliance with statutory procedure. G.S. 153-9(17); G.S. 160-200(11). Of course the closing must not deprive a property owner of reasonable ingress or egress. See *Blowing Rock v. Gregorie, supra.* An individual may restrain the wrongful obstruction of a public way, of whatever origin, if he will suffer injury thereby as distinct from the inconvenience to the public generally, and he may recover such special damages as he has sustained by reason of the obstruction. *Owens v. Elliott,* 257 N.C. 250, 125 S.E. 2d 589; *Scott v. Shackelford,* 241 N.C. 738, 86 S.E. 2d 453. The purchaser of a lot abutting a public street, whatever the origin of the street, takes title subject to the authority of the city to control and limit its use, and to abandon or close it under lawful procedure. *Re Joiner Street,* 164 N.Y.S. 272, involved the question of special property right by reason of ownership of a lot abutting a street of a subdivision. The Court made inquiry and response as follows: ". . . Does such dedication of the spaces designated as streets give the owners of such lots, after the spaces become streets of a municipality by acceptance of the public authorities, any special privileges not possessed by owners of lots situated on streets otherwise acquired? We think not. Such spaces so designated as streets and so dedicated, when accepted by the public authorities, become streets under the charter of the municipality, and subject to all its provisions. If the fee to the space in the front of the lots is conveyed to the owners of the lots, in case of the abandonment of such a street by the municipal authorities, the land in such space would belong to the owners of the lots. Aside from such rights possessed by the owners of the lots, we see no validity in any

claim put forward by them to peculiar private rights, differing in any respect from the rights possessed by abutting owners upon streets having a different origin."

The General Assembly has conferred upon the State Highway Commission the authority and duty to establish, construct and maintain "controlled-access Facilities" (G.S. 136-89.48 to G.S. 136-89.58) in both rural and urban areas, and has authorized the Commission and the governing bodies of cities and towns to enter into agreements with each other respecting the financing, planning, establishment, maintenance and use of controlled-access facilities or other public ways in their respective jurisdictions, G.S. 136-89.54. There is no suggestion that the statute was not fully complied with in regard to the North-South Expressway in Winston-Salem. In the establishment, construction and maintenance of that controlled-access facility, the Commission and the City of Winston-Salem, as agencies of the State, were exercising the police power of the State.

For the reasons hereinbefore set out we hold that plaintiffs have suffered no compensable damage.

Affirmed.

PARKER, J., dissenting:   The majority opinion at its beginning states the question for decision, and then says: "The same legal question, on similar facts, arose in *Hiatt v. Greensboro,* 201 N.C. 515, 160 S.E. 748 (1931)." After quoting *in extenso* from the opinion in the *Hiatt* case, the majority opinion states: "This decision, at the time of its rendition, was in accord with the weight of authority in other jurisdictions. 49 A.L.R. 351; 93 A.L.R. 642."

This is stated in 29A C.J.S., Eminent Domain (1965), § 105(1):

> "An easement or servitude, whether in the nature of a right of way, a restrictive covenant, or a negative or equitable easement, is an interest in land for which the owner is entitled to compensation, as much so as if the land to which the easement is appurtenant were taken or injured.
>
> "Thus the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken nor materially interfered with without just compensation, and this is so, even though another owns the fee in the highway."

This statement of the law is supported by the citation of a legion of cases from many jurisdictions in this country; included among the North Carolina cases cited is the *Hiatt* case; and it still seems to be the majority rule in this country. To the same effect, see Nichols on Emi-

nent Domain, 3d Ed., Vol. 2, pp. 117-118 (1963), which cites many cases from many jurisdictions, including several cases from North Carolina, and among them the *Hiatt* case. See also to the same effect Anno., 150 A.L.R. 644 (1944). To deny compensation to plaintiff in this case, this Court has to overrule the *Hiatt* case, and to approve the taking of a property right of plaintiffs without requiring the payment of just compensation, in violation of Article I, section 17, of the North Carolina Constitution, and in violation of the 14th Amendment to the United States Constitution. The majority opinion also gravely impairs, if it does not in effect overrule, *Davis v. Alexander*, 202 N.C. 130, 162 S.E. 372; *Long v. Melton*, 218 N.C. 94, 10 S.E. 2d 699. I think the *Hiatt* case is sound law, is in accord with the general rule in a majority of the jurisdictions, and I do not agree to overruling it. I vote to reverse the judgment below.