MISHEW E. SMITH AND HUSBAND ROBERT N. EDWARDS, AND ALTON B. SMITH, JR., PLAINTIFFS v. COUNTY OF DURHAM, DEFENDANT

No. COA10-1500

(Filed 16 August 2011)

**Eeasements—express dedication—summary judgment proper**

The trial court did not err in a real property case by granting summary judgment in favor of defendant with respect to its claim to possess an express easement across plaintiffs' property. Plaintiffs had expressly dedicated an easement for public use in the Final Plat of Subdivision & Dedication of Easement.

Appeal by plaintiffs from order entered 28 June 2010 by Judge Shannon R. Joseph in Durham County Superior Court. Heard in the Court of Appeals 12 May 2011.

*Nexsen Pruett, PLLC, by Robin K. Vinson, and Maxwell Freeman & Bowman, PA, by James B. Maxwell, for Plaintiff-appellants.*

*Stubbs, Cole, Breedlove, Prentis & Biggs, P.L.L.C., by Richard F. Prentis, Jr., and Bryson M. Aldridge, for Defendant-appellee.*

ERVIN, Judge.

Plaintiffs Robert Edwards; his wife, Mishew Smith; and Ms. Smith's brother, Alton Smith, appeal from an order denying Plaintiffs' motion for summary judgment and granting in part and denying in part Defendant County of Durham's motion for partial summary judgment. On appeal, Plaintiffs argue that the trial court erred by granting summary judgment in favor of Defendant with respect to its claim to possess an express easement across Plaintiffs' property. After careful consideration of Plaintiffs' arguments in light of the record and the applicable law, we conclude that the trial court did not err by granting partial summary judgment in Defendant's favor and that the trial court's order should be affirmed.

I. Background

A. Substantive Facts

The parties own adjoining tracts of land located on the Little River in Durham County. In November, 1998, Plaintiffs purchased a

tract of about 162 acres from the heirs of Wallace Clements ("Smith property"). The Clements family had owned the property since 1948. In April, 2008, Defendant purchased the adjoining parcel ("Cockleburr tract"), which was located adjacent to and south of the Smith property. Defendant acquired the Cockleburr tract in order to facilitate the implementation of the Little River Corridor Open Space Plan, which had been adopted by the Durham County Commission in 2001 for the purpose of preserving the watershed, improving water quality and protecting wildlife habitat.

The Cockleburr tract, which had been owned for many years by the Lee family, is bordered on three sides by the Little River and does not directly abut a public road. The nearest public road to both the Smith property and the Cockleburr tract is Johnson Mill Road. An existing easement permits access from the Smith property to Johnson Mill Road across property owned by a third party located to the east of the Smith property. However, ingress to and egress from the Cockleburr tract must be effectuated using an old road that crosses the Smith property. The present case stems from a dispute between the parties over the extent, if any, to which Defendant is entitled to use this road, which crosses the Smith property and connects the Cockleburr tract with the easement leading from the Smith property to Johnson Mill Road.

Beginning no later than the late 1940s and for many decades thereafter, an informal arrangement between the Clements and Lee families allowed the owners of the Cockleburr tract and their guests to cross the Smith property by means of this existing road. At some point, members of the Clements and Lee families erected a gate across the road at the point where it joined the easement connecting the Smith property with Johnson Mill Road for the purpose of restricting access to the area to members of the Clement and Lee families and anyone else who was given a key to the gate.

In 1993, the Clements family formally granted Mr. Lee an easement allowing use of the old access road for the purpose of harvesting timber from the Cockleburr tract and furthering certain development plans. In order to obtain the easement, Mr. Lee agreed to improve the access road so that it met residential lending specifications. However, the agreement also provided that, if Mr. Lee failed to make the necessary improvements, the formal easement would expire upon the earlier of a date twelve months after the date upon which logging operations were completed or eighteen months after the date upon which the easement agreement was executed. During the process

that led to the granting of this temporary easement, the Lee family hired Norman Beaver to prepare a survey of the access road. Since Mr. Lee failed to improve the existing access road, the easement expired by its own terms in 1995.

After purchasing the Smith property, Mishew Smith and her husband, Robert Edwards, identified a proposed home site on the property, which was located at some distance from the point at which the eastern border of their property met the existing access easement leading to Johnson Mill Road. In order to obtain the necessary construction loan, the Smiths created a minor subdivision by dividing their property into two parcels. The first parcel, identified as "Tract 2," consisted of a square tract of less than twenty acres on which Ms. Smith and Mr. Edwards planned to build a house. The other parcel, identified as "Tract 1," consisted of the remainder of the Smith property.

In his affidavit, Steven L. Medlin stated that:

2. I have been employed by the City of Durham and County of Durham Planning Department since June 1986, and since February 2008 I have been the Director of the Durham City-County Planning Department. . . .

3. My job description as Director includes participation in drafting, interpretation, implementation, and application of the Durham City-County Zoning Ordinance . . . [,] the Durham City-County Subdivision Ordinance, and the Durham City-County Unified Development Ordinance[.]

4. In June 1999, Mishew Edgerton Smith submitted to the Planning Department a plat for review and approval for recording, and was assigned a case number D99-375. This proposed plat showed a minor subdivision of an existing approximately 162-acre tract of land, subdividing said tract of land into an acreage tract of 150.68 acres and a square (700.00 feet by 700.00 feet square) 11.249 acre tract for a "proposed dwelling site". This preliminary plat showed creation of a 30-foot private access easement across an existing gravel drive extending east, connecting with a 60-foot wide easement, which ran from the north-east corner of the subject property to the southern boundary of the property, where it connected with the property of Robert D. Lee, III. Access therefore to the proposed 11.249-acre dwelling site consisted of access across the 30-foot private access easement and access across the 60-foot easement extending through the prop-

erty. Both easements also indicated that there was an existing gravel drive or gravel road along the easements providing access.

5. After review by staff, several comments and requirements of change to the plat were suggested including, among others, the following:

a An "Attorney Certification for Easements" needed to be added;

b. From the Transportation Division a requirement that "the 60-foot easement should be re-dedicated such that the entire gravel road is within the easement."

c. The proposed plat did not conform with and meet the requirements of the Durham City-County Zoning Ordinance section 8.1.13, which provides in part as follows[:] "no building shall be erected or enlarged on a parcel in any district unless such parcel abuts upon or has access to a publicly accepted and maintained street, except in the following circumstances:

"B. Ingress/Egress Easement: 2 ... Easements are allowed for one single family dwelling."

6. Thus the proposed plat did not conform with the requirements of the zoning ordinance for a buildable lot, and therefore in order for the proposed dwelling site to be used for the construction of a dwelling, it was suggested that the requirements of the ordinance could be met if the lot was changed to a "flag lot" in which the 30-foot private access easement connecting with the 60-foot existing easement would be part of the lot as opposed to being an easement (thus the pole of the "flag lot") which would then provide for the "flag lot" to have the required access via the existing 60-foot right-of-way, connecting eventually with Johnson Mill Road.

7. It was also necessary for this "building lot" to meet the requirements of the zoning ordinance for it to connect to an existing easement of record which the 60-foot right of way easement was represented and construed to be.

8. The requested changes to the plat, including the re-dedication of the 60-foot easement, and the creation of the "flag lot" connecting with the existing 60-foot easement to provide access necessary to construct a dwelling were completed, and the plat as amended was subsequently recorded in Plat Book 144 at Page 79 Durham County Registry.

9. The acknowledgement, re-dedication, and use of the 60-foot right of way as shown on the plat, and acknowledgement of the 60-foot right of way as an existing right of way, was therefore necessary to provide access to the proposed dwelling site and was therefore a requirement of the zoning ordinance in order to create a buildable lot and the recording of the subdivision plat.

As is evidenced in Mr. Medlin's affidavit, Plaintiffs recorded a plat titled "Final Plat of Subdivision & Easement Dedication" at Plat Book 144, Page 79 in the Durham County Registry on 25 August 1999. The Final Plat of Subdivision & Easement Dedication was prepared by Triangle Surveyors and contains the following recital signed by Mishew Edgerton Smith and Alton Battle Smith:

The undersigned owner of the property lying within the attached plat and subdivision hereby certifies that he/she ordered the work of surveying and platting done and that all public and private streets, easements, and other areas so designated upon said plat are hereby dedicated for such use.

The Final Plat of Subdivision & Easement Dedication also contains a certification signed by Ronald Carpenter, a surveyor for Triangle Surveyors, stating that:

I, Ronald D. Carpenter, do hereby certify that the attached . . . plat and subdivision was made by order and direction of Mishew Edgerton Smith, the Owner of the land shown and that the land shown on this plat is entirely within the boundaries of the land conveyed to the above owner by the references listed, and I further certify that the said survey and plat are correct in all respects.

The easement shown on the Final Plat of Subdivision & Easement Dedication is situated at the same location at which the old road was depicted on earlier surveys, including Norman Beaver's 1993 survey, and is described as a "60' wide access easement per unrecorded Easement Document between William B. Terry & Wife, and Ann M. Clements heirs dated November 3, 1993 and per an unrecorded Plat by Norman A. Beaver Entitled 60' R/W tract for James & Robert Lee Property, Property of Ann Clements Estate Dated August 2, 1993." After obtaining approval of their subdivision from Defendant's planning department, Plaintiffs borrowed money on at least seven occasions, using the home site tract as collateral. Each of the resulting notes and deeds of trust refer to the 1999 Final Plat of Subdivision &

Easement Dedication, which depicted the 60' easement as a component of the only access to the proposed residence.

After Defendant purchased the Cockleburr tract, it employed a surveyor to prepare a survey of the property. However, Defendant's representatives were denied access to the road crossing the Smith property, an action which precluded them from entering upon the Cockleburr tract.

### B. Procedural History

On 30 June 2008, Plaintiffs filed a "Complaint to Quiet Title and for Declaratory Judgment." In their complaint, Plaintiffs alleged that Defendant "mistakenly and wrongfully" claimed the right to "an access easement through and across Plaintiffs' property" and asserted that "Defendant's claim is valid neither in law nor in equity." Plaintiffs sought "a judgment under the terms of which the court will rule that the cloud of Defendant's purported easement or other assertion of burden adverse to Plaintiffs be resolved in their favor, and that Plaintiffs be declared the owners in fee simple of the Plaintiffs' Property, free and clear of any claims of Defendant."

On 29 August 2008, Defendant filed its "Answer, Counterclaim and Request for a Preliminary Injunction." In its answer, Defendant listed the previous owners of the relevant tracts, described the use made of the road by former owners of those tracts, and quoted from Plaintiffs' filings in the Durham County registry. In addition, Defendant requested the trial court to declare that it had an easement in the existing road across Plaintiffs' property on the basis of express grant, easement by prescription, and easement by implication or necessity theories and asked the trial court to issue a preliminary injunction precluding Plaintiffs from obstructing their access to the Cockleburr tract using the existing road depicted on the Final Plat of Subdivision & Easement Dedication.

On 15 April 2010, Plaintiffs filed a motion seeking the entry of summary judgment in their favor. On 30 April 2010, Defendant filed a motion seeking entry of summary judgment in its favor on the basis of express grant and easement by implication or necessity theories. On 28 June 2010, the trial court entered an order denying Plaintiffs' summary judgment motion, denying Defendant's request for summary judgment on the basis of an easement by necessity or implication theory, and granting Defendant's request for summary judgment on the basis of an express easement theory. After the entry of the 28 June

2010 order, Plaintiffs filed a "Motion for Reconsideration and to Alter or Amend Judgment" pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 on 12 July 2010. The trial court entered an order denying Plaintiffs' motion on 29 July 2010. Plaintiffs noted an appeal to this Court from the trial court's orders.[1]

## II. Legal Analysis

### A. Standard of Review

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A defendant may show entitlement to summary judgment by: '(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.' " *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 166, 684 S.E.2d 41, 46 (2009) (quoting *James v. Clark*, 118 N.C. App. 178, 180-81, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)). " 'Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.' " *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343 (2003) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 352 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261, 122 S. Ct. 345 (2001)), *aff'd*, 358 N.C. 131, 591 S.E.2d 521 (2003).

"An appeal from an order granting summary judgment solely raises issues of whether on the face of the record there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Carcano*, 200 N.C. App. at 166, 684 S.E.2d at 46 (citing *Smith-Price v. Charter Behavioral Health Sys.*,

---

1. As a result of the fact that the trial court certified the order granting summary judgment for immediate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), this case is properly before us despite the fact that the trial court's order did not resolve all of the matters in dispute between the parties. *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999) (citations omitted).

164 N.C. App. 349, 352, 595 S.E.2d 778, 781 (2004)). "We review a trial court's order granting or denying summary judgment *de novo*. 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 342, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

In the present case:

> "Each party based its claim upon the same sequence of events[, and] . . . [n]either party has challenged the accuracy or authenticity of the documents establishing the occurrence of these events. Although the parties disagree on the legal significance of the established facts, the facts themselves are not in dispute. Consequently, we conclude that there is no genuine issue as to any material fact surrounding the trial court's summary judgment order."

*Musi v. Town of Shallotte*, ___ N.C. App. ___, ___, 684 S.E.2d 892, 894 (2009) (quoting *Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 359, 558 S.E.2d 504, 507, *disc. review denied*, 356 N.C. App. 159, 568 S.E.2d 186 (2002)). As a result, since our review of the record confirms that there is no disputed issue of material fact in the present case, the only issue that we need to address is the extent, if any, to which the trial court erred by concluding as a matter of law that Defendant had an express easement authorizing it to access the Cockleburr tract using the road across the Smith property.

### B. Validity of Trial Court's Decision

Plaintiffs' principal challenge to the trial court's order is that the Final Plat of Subdivision & Easement Dedication simply made a "reference" to the "60' wide access easement" for the purpose of providing "historical information" and did "not create a valid, binding easement." We disagree.

A careful review of Mr. Medlin's affidavit establishes that:

1. Plaintiffs submitted to Defendant's planning department a subdivision plat showing the division of their property into two lots;

2. Plaintiffs' proposed subdivision was rejected, in part because the smaller lot on which Plaintiffs planned to construct a home did not connect with or abut a public road or an

SMITH v. CNTY. OF DURHAM

[214 N.C. App. 423 (2011)]

existing access easement, as required by Defendant's zoning regulations;

3. To obtain approval of their subdivision plat, Plaintiffs modified the boundary lines of the two lots so that the home site lot included a spur connecting to the 60' road connecting Defendant's property to the border of Plaintiffs' land, where it in turn connected to an easement crossing the property of a third party and connecting Plaintiffs' property to Johnson Mill Road;

4. The Final Plat of Subdivision & Easement Dedication that Plaintiffs submitted to Defendant's planning department depicts the boundary lines of the smaller lot as including a narrow strip of land that connects the main part of the lot with the 60' road across Plaintiffs' property;

5. The road is depicted on the Final Plat of Subdivision & Easement Dedication and is described as a "60' wide access easement per unrecorded Easement Document between William B. Tarry & Wife, and Ann M. Clements heirs dated November.3 1993 and per an unrecorded Plat by Norman Beaver Entitled 60' R/W tract for James & Robert Lee Property, Property of Ann Clements Estate Dated August 2 1993."

6. This road is the only access easement depicted on the Final Plat of Subdivision & Easement Dedication.

7. Plaintiffs signed a certification on the Final Plat attesting that "[t]he undersigned owner of the property lying within the attached plat and subdivision hereby certifies that he/she ordered the work of the surveying and platting done and that all public and private streets, easements, and other areas so designated upon said plat are hereby dedicated for such use."

8. To receive approval for their proposed subdivision, Plaintiffs were required to provide access for their proposed home site to a public road or an existing easement of record. The dedication and acknowledgement of the 60' easement was a requirement for Plaintiffs to be permitted to record their subdivision plat and have a lot on which a house could be built.

9. Plaintiffs recorded the Final Plat of Subdivision & Easement Dedication in the Durham County Registry.

These undisputed facts establish that Plaintiffs, in order to obtain approval for their proposed subdivision and otherwise further their own interests, expressly dedicated the 60' road that crossed their property and linked both their property and Defendant's property to the easement that connected both properties to Johnson Mill Road for public use. As this Court stated in addressing a similar situation:

> It is uncontradicted that [Plaintiffs] employed [a surveyor] to pre-pare the plat of the subdivision, that they petitioned defendant to approve the subdivision as shown on the plat, and that it was accepted and approved by defendant. They do not deny that they signed the plat and thereby . . . "dedicate[d] to public use as streets, playgrounds, parks, open spaces, and easements forever all areas so shown or indicated on said plat." . . . In one breath, plaintiffs claim all the benefits that are afforded by the defend-ant's approval of their subdivision and, at the same time, seek to withdraw the burdens on the land that defendant required to be imposed thereon before it would approve the subdivision. The easement appearing on plaintiffs' own map of their subdivision is not a "cloud" on their title.

*Sampson v. City of Greensboro*, 35 N.C. App. 148, 149, 240 S.E.2d 502, 503 (1978).

In seeking to persuade us to reach a different result, Plaintiffs contend that the Final Plat of Subdivision & Dedication of Easement "is insufficient to create a new easement in favor of Defendant as a matter of law." In support of this argument, Plaintiffs effectively urge us to treat the Final Plat of Subdivision & Dedication of Easement as an agreement between Plaintiffs and Defendant. For example, Plaintiffs argue that "[e]xpress easements are to be construed using the rules for construction of contracts, with the key being to ascer-tain the intent of the parties 'as gathered from the entire instrument at the time it was made.' " (quoting *Brown v. Weaver-Rogers Assoc.*, 131 N.C. App. 120, 122, 505 S.E.2d 322, 324 (1998), *disc. review denied*, 350 N.C. 92, 532 S.E.2d 523 (1999)). Similarly, Plaintiffs argue that "[a]n express conveyance of an easement must comply with the requirements for deeds, which include identifying a grantee legally capable of holding title to real property, *Gifford v. Linnell*, 157 N.C. App. 530, 579 S.E.2d 440 [*disc. review denied*, 357 N.C. 458, 585 S.E.2d 754] (2003), and being either supported by consideration or validly recorded within two years as a gift deed, *Patterson v. Wachovia Bank & Trust Co.*, 68 N.C. App. 609, 315 S.E.2d 781 (1984)." These arguments lack merit for several reasons.

We first note that Plaintiffs fail to cite any authority in support of their contention that, in all instances, the dedication of an access easement must "comply with the requirements for deeds." Neither of the cases cited in Plaintiffs' brief during their discussion of this issue involve disputes over easements. In addition, the approach that Plaintiffs advocate assumes that an easement must be created by means of a deed of easement from one party to another. However, the express easement at issue in the present case did not result from an agreement or contract between two parties, but resulted, instead, from Plaintiffs' unilateral dedication, or rededication, of the easement for the purpose of obtaining approval of their proposed subdivision and procuring the construction loans needed to facilitate the building of their residence.[2] We are simply not aware of any authority holding that an easement dedicated by a property owner during the course of subdividing his or her property must meet the requirements for the execution of a valid deed, such as an identified "grantee" or the existence of "consideration" for the easement, and conclude that no such requirement exists in current North Carolina law.

On the contrary, we note that, in commercially-developed subdivisions, the plat in which easements are dedicated may well be recorded before any lots have been sold. For example, Durham City-County Unified Development Ordinance, section 3.63 B. provides that "[a]ny person who, being the owner or the agent of the owner of any land located within the jurisdiction of this Ordinance . . . transfers, or sells land by reference to, exhibition of, or any other use of a plat showing a subdivision of the land before the plat has been properly approved under this Ordinance, and recorded in the Office of the Register of Deeds, shall be guilty of a misdemeanor and shall be pun-

---

2. The need for Plaintiffs to dedicate an easement across their property stemmed from the specific manner in which they wished to configure the lots in their proposed minor subdivision. Had Plaintiffs chosen to do so, they could have modified the boundaries of the home site tract so that this lot extended to the easement across the third party tract connecting the Smith property with Johnson Mill Road. Although acting in that manner would have still resulted in the creation of a two-lot subdivision, the home site tract would have been considerably larger than is currently the case. Alternatively, Plaintiffs might have extended the spur or "flagpole" part of the home site lot so that it reached the easement across the third party tract; however, acting in that manner would have resulted in the creation of three separate lots—the home site lot and two others, one below and one above the "flagpole." Finally, Plaintiffs could have created a two-lot subdivision with the smaller home site tract situated on the eastern side of the Smith property. Instead, for reasons satisfactory to themselves, Plaintiffs elected to build their home on a smaller lot that included a spur or "flagpole" intended to satisfy applicable zoning requirements using an existing access road which remained part of the larger tract.

ishable, accordingly, by fine or imprisonment." Thus, the developer of a subdivision is required to file a plat, including any pertinent easements, before any grantees are identified. Furthermore, it is well established that:

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. . . . It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel.

*Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964) (citations omitted). As a result, it is possible to create a valid and binding easement by sale of property in a subdivision, although the plat evidencing the dedication of such easement was recorded before any specific grantees were identified.

In addition, Plaintiffs argue that the 60' easement specified in the Final Plat of Subdivision & Dedication of Easement was nothing more than a description of or reference to a "driveway" that Plaintiffs built for the purpose of connecting their property with the easement leading from their property across the property of a third party to Johnson Mill Road. Plaintiffs have not, however, cited any authority tending to suggest that their description of portions of their two lots as a "driveway" has any legal effect, and we have found none during our own research. As a result, we conclude that the fact that Plaintiffs use a portion of the 60' road accessed by means of a narrow extension of their lot as a "driveway" has no legal significance.

Finally, Plaintiffs assert that "the reference by [their surveyor,] Mr. Carpenter[, to] the old, expired timber easement, as well as the reference by [their attorney,] Ms. Cayton to a portion of Plaintiffs' driveway in deeds of trust to several banks, do[es] not create or constitute a deed of conveyance in favor of the County of Durham, as a matter of law." We do not, however, believe that this contention, even if correct, has any bearing on the validity of the trial court's decision that Plaintiff had expressly dedicated an easement for public use in

**SMITH v. CNTY. OF DURHAM**

[214 N.C. App. 423 (2011)]

the Final Plat of Subdivision & Dedication of Easement. Thus, this contention lacks merit as well.[3]

## III. Conclusion

Thus, we conclude, for the reasons set forth above, that the signing and recording of the Final Plat of Subdivision & Dedication of Easement, in which Plaintiffs depicted the "60' access easement" and certified that "all public and private streets, easements, and other areas so designated upon said plat are hereby dedicated for such use," resulted in the express dedication of an easement across their property for the use and benefit of the public, including Defendant. As a result, the trial court correctly granted summary judgment in favor of Defendant based on an express easement theory, so that the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges CALABRIA and THIGPEN concur.

---

3. Given our conclusion that the trial court correctly granted summary judgment in favor of Defendant on an express grant theory, we need not address Plaintiffs' remaining arguments in detail. Although Plaintiffs argue at length that the 1993 temporary easement cannot be enforced against them, we see no indication in the present record that Defendant has made any effort to enforce that temporary easement or that the trial court based its order on a decision to enforce that instrument. Furthermore, Plaintiffs argue that the trial court erred by considering the 1993 easement "separately" from the survey by Norman Beaver. As a result of the fact that the easement addressed in the trial court's order was created by the express terms of the Final Plat of Subdivision & Dedication of Easement, any reliance that the trial court may have placed on the temporary easement would not change the proper outcome in this case. In addition, Plaintiffs assert that "Defendant now wants the right to build a huge, public road with water and power lines across Plaintiffs' private residence." However, we need not reach the extent, if any, of Defendant's right to construct necessary improvements on the access easement, since that issue has not been presented for our consideration in this case. Finally, Plaintiffs argue that the Final Plat of Subdivision & Dedication of Easement did not create an implied easement by plat. Although Plaintiffs are correct in noting that Defendant has not purchased a lot in any subdivision described in the Final Plat of Subdivision & Dedication of Easement, the validity of this argument has no bearing on the proper outcome of this case, which rests on an express easement theory rather than an implied easement theory.