IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-91

No. COA20-423

Filed 6 April 2021

Dare County, No. 19-CVS-496

ROBERT E. HOVEY and wife, TANYA L. HOVEY, Plaintiffs,

v.

SAND DOLLAR SHORES HOMEOWNER'S ASSOCIATION, INC., and the TOWN OF DUCK, Defendants.

Appeal by Defendant Sand Dollar Shores Homeowner's Association, Inc., from judgment entered 18 February 2020 by Judge L. Lamont Wiggins in Dare County Superior Court. Heard in the Court of Appeals 10 February 2021.

*The Wills Law Group, by Gregory E. Wills, for Plaintiffs-Appellees.*

*Fox Rothschild LLP, by Troy D. Shelton, Elizabeth Brooks Scherer, and Robert H. Edmunds, Jr., for Defendant-Appellant Sand Dollar Shores Homeowner's Association, Inc.*

*No brief filed by Defendant Town of Duck.*

INMAN, Judge.

¶ 1     The Town of Duck is a seaside resort community that provides no public beach access. All oceanfront lots there are privately owned and have been since before Duck was incorporated in 2002. Although members of the public are entitled to walk on the beach, wade in the ocean, and otherwise use the natural resources abutting the

boundaries of these properties, the land between the beach and public streets and highways belongs to private landowners. This appeal arises from a complaint by two Duck residents who do not own oceanfront property and who assert a public right of access to a pedestrian walkway that provides convenient beach access from a public street to members of Sand Dollar Shores Homeowner's Association ("Defendant").

¶ 2        Defendant appeals from a summary judgment order declaring that the walkway maintained by and titled to Defendant has been dedicated to the public. After careful review, we hold the trial court erred in granting summary judgment for Robert and Tanya Hovey ("Plaintiffs"), reverse the trial court's order, and remand with instruction to enter summary judgment for Defendant.

## I.        FACTUAL AND PROCEDURAL HISTORY

¶ 3        In 1981, Sand Dollar Shores, Inc., a real estate development company, recorded a plat for the Sand Dollar Shores subdivision with the Dare County Register of Deeds.[1] The subdivision, per the plat map, consists of 42 residential lots along Seabreeze Drive, a road that extends from State Route 1200 and terminates in a double cul-de-sac near the Atlantic Ocean.

---

[1] The Town of Duck was incorporated after recordation of the plat, and Sand Dollar Shores now resides within Duck's city limits.

¶ 4    In addition to displaying the lots and Seabreeze Drive, the plat map shows an eight-foot-wide pedestrian beach access easement (the "Easement") running from the double cul-de-sac to the beach between lots 2 and 3:



The plat map includes a "certificate of dedication," which provides that the developer "hereby . . . dedicate[s] all roads, alleys, walks, parks, and other sites to public or private use as noted." The certification further states that "the streets and roads in

this subdivision are dedicated to public use." Nothing on the face of the plat map notes the Easement as for either public or private use.

¶ 5    The plat map was approved for recordation by Dare County, which, per a certificate of approval and acceptance of dedication on the face of the plat map, "accepted the dedication of roads, easements, right-of-way, public parks, and other sites for public purposes as shown hereon." Two days later, the developer recorded restrictive covenants for Sand Dollar Shores. The covenants stated that the Easement is for the sole use of homeowners within Sand Dollar Shores and their guests and that use of the Easement by anyone else "is prohibited" and may result in prosecution for trespassing on Sand Dollar Shores Property.

¶ 6    Defendant was established in 1990, nine years after the plat map and covenants were recorded, and a few months later the developer deeded the beach access to Defendant. Following the transfer, Defendant assumed the sole and exclusive responsibility for the ownership and maintenance of the Easement and has continued to maintain it ever since.

¶ 7    Plaintiffs purchased a house across the highway from Sand Dollar Shores in 2002 and began renting out the house on a weekly basis during the summer months. They also started a beach equipment rental business to serve their residential renters

and other vacationers. Plaintiffs and their customers used the Sand Dollar Shores beach access to reach the beach.

¶ 8        In 2015, Defendant amended its restrictive covenants to provide, among other things, that the Easement was dedicated for the use of Defendant's members only. Plaintiffs continued to use the Easement during this time, and, in April 2016, Defendant's attorney wrote a letter to Plaintiffs stating that they would be held liable if they and their tenants did not stop using the Easement. Following the receipt of this letter, Plaintiffs' residential rental management company cancelled its property management contract with Plaintiffs and refused to include Plaintiffs' rental home in the rental management program for the 2016 summer rental season.

¶ 9        Later in 2016, Plaintiffs filed declaratory judgment actions against Defendant and the Town of Duck, requesting that the trial court declare the Easement had been dedicated to the public. The Town of Duck did not file a responsive pleading, but the city manager filed an affidavit attesting that the Town had "no intention of arresting the Plaintiffs for use of any of the Accesses absent a Court decision settling any civil disputes arising between the Plaintiffs and the underlying owners of the Accesses." Plaintiffs voluntarily dismissed their action without prejudice and continued using the Easement.

¶ 10        On 29 May 2019, Robert Hovey was arrested for trespassing on Defendant's property. In response to the arrest, Plaintiffs again filed suit requesting that the trial court declare the Easement dedicated to the public. The Town, as before, took no position on the litigation but agreed to be bound by any judgment. Plaintiffs moved for summary judgment a few months after Defendant filed its answer.

¶ 11        The parties entered into several stipulations prior to the summary judgment hearing and agreed "that no issues of material fact exist between the parties to this lawsuit, and that the action before the [trial court] exists only as a matter of law." At the summary judgment hearing itself, Plaintiffs argued that the plat map alone established a public dedication of the Easement.

¶ 12        Defendant disagreed and requested summary judgment be entered in its favor, asserting, among other arguments, that the face of the plat map failed to disclose an unambiguous intention to dedicate the Easement to the public. Following the hearing, the trial court granted the Plaintiffs' motion for summary judgment. Defendant filed timely notice of appeal.

## II.  <u>ANALYSIS</u>

¶ 13        Defendant argues that a public dedication of private property requires a clear and unmistakable intent on the part of the landowner to dedicate the land to public use. Because the plat map here states an intention only to dedicate "all roads, alleys,

walks, parks, and other sites to public or private use as noted," and the document contains no note dedicating the Easement as for public use, Defendant contends the evidence fails to establish a clear intention to dedicate the Easement for public use. Plaintiffs disagree, asserting that the plat map language reflects a public dedication. For the reasons explained below, we hold that the plat map fails to show an unambiguous intention to dedicate the Easement to public use. We reverse the trial court's judgment and remand with instructions to enter summary judgment for Defendant.

### 1. Standard of Review

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgement as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019). We review an order granting or denying summary judgment de novo. *Craig v. New Hanover Cnty. Bd. Of Educ.,* 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009).

### 2. The Law of Public Dedication

"Dedication is a form of transfer whereby an individual grants to the public rights of use in his or her lands." *Kraft v. Town of Mt. Olive*, 183 N.C. App. 415, 418, 645 S.E.2d 132, 135 (2007) (citing *Spaugh v. Charlotte*, 239 N.C. 149, 159, 79 S.E.2d

748, 756 (1954)). Transfer by dedication requires an intent by the landowner to share use of the land with the public, "though such intention may be shown by deed, by words, or by acts." *Milliken v. Denny*, 141 N.C. 224, 230, 53 S.E. 867, 869 (1906). "The evidence in support of the intent of an owner to dedicate an easement should be ' "clear and unmistakable." ' " *Wright v. Town of Matthews*, 177 N.C. App. 1, 11, 627 S.E.2d 650, 658 (2006) (quoting *Green v. Barbee*, 238 N.C. 77, 81, 76 S.E.2d 307, 310 (1953)). In other words:

> The intention of the owner to set apart land for the use of the public is the foundation and very life of every dedication. . . . The acts and declarations of the landowner indicating the intent to dedicate his land to the public use, must be unmistakable in their purpose and decisive in their character to have that effect.

*Nicholas v. Salisbury Hardware & Furniture Co.*, 248 N.C. 462, 468, 103 S.E.2d 837, 842 (1958) (citations and quotation marks omitted).

¶ 16 Intention alone is not adequate to accomplish a dedication; a public authority must also accept the offer. *See, e.g., Tower Development Partners v. Zell*, 120 N.C. App. 136, 140, 461 S.E.2d 17, 20 (1995) ("Because North Carolina does not have statutory guidelines for dedicating streets to the public, the common law principles

of offer and acceptance apply." (citation omitted)).[2] Acceptance, too, may be express or implied. *Kraft*, 183 N.C. App. at 420, 645 S.E.2d at 137. A public authority expressly accepts a dedication by proper adoption or execution of an official act, including "a formal ratification, resolution, or order by proper officials, the adoption of an ordinance, a town council's vote of approval, or the signing of a written instrument by proper authorities." *Bumgarner v. Reneau*, 105 N.C. App. 362, 366-67, 413 S.E. 2d 565, 569, *aff'd as modified*, 332 N.C. 624, 422 S.E.2d 686 (1992). Acceptance may be implied when the offered land is "generally used by the public and . . . the proper authorities have asserted control [over it] for the period of twenty years or more." *Scott v. Shackelford*, 241 N.C. 738, 743, 86 S.E.2d 453, 457 (1955)

---

[2] Plaintiffs contend that N.C. Gen. Stat. § 136-102.6 (2019) abrogated the common law rules governing dedications for subdivision plats recorded after 1975. *Tower Development Partners,* which held the common law of dedications governed a subdivision plat recorded in 1986, precludes Plaintiffs' argument. 120 N.C. App. at 140, 461 S.E.2d at 20. Also, the statute expressly recognizes that public dedications are offered and accepted, incorporating the common law rather than abrogating it. *See* N.C. Gen. Stat. § 136-102.6(b) ("Any street designated on the plat or map as public shall be conclusively presumed to be an *offer* of dedication to the public of such street." (emphasis added)); N.C. Gen. Stat. § 136-102.6(d) ("The certificate of approval shall not be deemed an *acceptance* of the dedication of the streets on the subdivision plat or map." (emphasis added)). The General Assembly has made it clear that the statute is intended "to insure that new subdivision streets described herein to be dedicated to the public will comply with the State Standards *for placing subdivision streets on the State highway system for maintenance*, or that full and accurate disclosure of the responsibility for construction and maintenance of *private streets* be made." N.C. Gen. Stat. § 136-102.6(i) (emphasis added). The statute has no bearing on the public dedication of a pedestrian beach access easement, which is beyond the scope of highway construction standards.

(citation and quotation marks omitted).

¶ 17        The burden of proving both an offer and acceptance of dedication falls on the party propounding the dedication's existence. *See, e.g., Town of Lumberton v. Branch*, 180 N.C. 249, 250, 104 S.E. 460, 461 (1920) (holding, in a town's action asserting possession by public dedication, that "[t]he burden was on the plaintiff to show that the land in controversy, and now in possession of the defendant, is a public street of Lumberton."). This is not a low burden, as "[d]edication is an exceptional and peculiar mode of passing title to an interest in land. . . . It is not a trivial thing to take another's land, and for this reason the courts will not lightly declare a dedication for public use." *Nicholas*, 248 N.C. at 470, 103 S.E.2d at 843 (citation and quotation marks omitted).

*3. Plaintiffs Have Not Shown Unmistakable Intent to Dedicate the Easement*

¶ 18        Under the applicable law described above, we hold that Plaintiffs have not shown a clear and unmistakable intent by the developers of Sand Dollar Shores to publicly dedicate the Easement. The dedication on the face of the plat provides that the developer "dedicate[d] all roads, alleys, walks, parks, and other sites *to public or private use as noted*," (emphasis added), meaning dedications of any walks "for public . . . use" and "private use" would be "noted" on the plat. Only the "streets and roads" are noted as for public use. Given the qualified language of the dedication that

only items noted "for public . . . use" would be dedicated to the public, and in light of the dedication of the streets in such a manner, the failure to designate the Easement as public creates, at best, an ambiguity as to whether the Easement was offered for dedication. *Cf. Ocean Hill Joint Venture v. Currituck Cnty. Bd. of Comm'rs.*, 178 N.C. App. 182, 184, 630 S.E.2d 714, 716 (2006) (describing a failure to designate a road as either public or private under dedication language practically identical to that at issue here as an "ambiguity"). Because an offer of public dedication must be shown by evidence indicating a "clear and unmistakable" intent, *Wright*, 177 N.C. App. at 11, 627 S.E.2d at 658 (citation and quotation marks omitted), and no such unambiguous intention is present on the face of the Sand Dollar Shores plat, the trial court erred in entering summary judgment for Plaintiffs and their claim should have been dismissed.

¶ 19        Plaintiffs asserted at oral argument that the language noting the streets as dedicated to the public was not actually a notation attributable to the developer because it was found below and apart from the signed dedication. Plaintiffs contend that the language instead simply served to put the public on notice that the streets would be governed by particular statutes referenced in the note. Plaintiffs did not offer any legal support for this proposition, and we can find no authority suggesting the placement of such a note above, below, or beside the dedication signed by the

party seeking to record the plat has any bearing on its application or interpretation. As for whether the note was simply intended to provide notice, *all* portions of the plat serve that purpose, the very reason for recordation of land rights. *See, e.g., Hill v. Pinelawn Memorial Park, Inc.*, 304 N.C. 159, 163, 282 S.E.2d 779, 782 (1981) ("The purpose of [the recordation] statute is to enable intending purchasers and encumbrancers to rely with safety on the public record concerning the status of land titles." (citations omitted)).

Plaintiffs also argue that other decisions by this Court establish that once a subdivision plat has been dedicated by the developer and approved by a governing body, any easements shown on that plat are dedicated to the public irrespective of any qualifying language conscribing the dedication to sites noted as public. The decisions cited by Plaintiffs are distinguishable, and none of them support Plaintiffs' argument.

Plaintiffs rely on this Court's holdings in *Ocean Hill, Sampson v. City of Greensboro*, 35 N.C. App. 148, 240 S.E.2d 502 (1978), *Smith v. County of Durham*, 214 N.C. App. 423, 714 S.E.2d 849 (2011), and *Emanuelson v. Gibbs*, 49 N.C. App. 417, 271 S.E.2d 557 (1980). A comparison of each of these cases to the one before us undermines Plaintiffs' argument.

Plaintiffs rely most heavily on *Ocean Hill*. In that case, a subdivision plat was

recorded in the late 1970s with language—virtually identical to that at issue here—dedicating "all streets, alleys, walks, parks, and other open space to public or private use as noted." *Ocean Hill*, 178 N.C. App. at 184, 630 S.E.2d at 716. And, like the Easement in this case, the plat did *not* specify whether the streets shown on the map were public or private, resulting in an "ambiguity in the plat whether [the subdivision's] roads were designated for public or private use." *Id.* at 184, 630 S.E.2d at 716.

¶ 23        The homeowners association grew concerned about the public use of the road; however, instead of filing a declaratory judgment action contesting any public dedication, the association conceded that the roads had been dedicated to the public and successfully petitioned the County Commissioners to close the roads to the public pursuant to a public road closure statute. *Id.* Interested members of the public—including the original developers who recorded the subdivision plat—petitioned for trial *de novo* in superior court to reverse the Board's decision and reopen the roads. *Id.* One of the developers, as well as that developer's attorney, testified that it was always the developers' intention that the roads be public and that the conveyance of the roads to the association in 1993 was not intended to revoke public access. *Id.* at 185, 630 S.E.2d at 716. A jury returned a verdict against the association. *Id.* at 185, 630 S.E.2d at 717. The association unsuccessfully appealed to this Court on grounds

independent of any issues pertinent to dedication. At no point did the association rescind their concession that the roads had been publicly dedicated, and this Court did not address that issue on appeal. *Id.*

¶ 24        *Ocean Hill* does not support Plaintiffs' position because the question of whether the plat contained an offer to dedicate the roads was not raised below or on appeal and was, in fact, conceded by the party seeking to limit access. *Id.* at 184, 630 S.E.2d at 716. While it is true that the dedication language in *Ocean Hill* and the failure to note the roads as public or private is factually similar to this case, it does not show the necessary unmistakable intention of dedication—indeed, this Court described the dedication and failure to denote the roads in *Ocean Hill* as creating an "*ambiguity* in the plat whether [the subdivision's] roads were designated for public or private use." *Id.* (emphasis added). Further, there was ample evidence in that case to resolve the ambiguity in favor of dedication, including direct testimony from one of the developers and his attorney that it was always the developers' intent to dedicate the roads to the public. Plaintiffs here have offered no such additional evidence,[3] and an ambiguous plat cannot alone support the requisite clear and unmistakable intent necessary for

_____

[3] The only additional evidence presented to the trial court regarding the developer's intent were the restrictive covenants filed by the developer two days after the plat and restricting use of the beach access to the homeowners of Sand Dollar Shores and their guests.

public dedication. *Cf. Wright*, 177 N.C. App. at 11, 627 S.E.2d at 658-59 (holding a deed that "failed to specify whether [a] right-of-way was for purposes of a public or private street" was insufficient to show clear and unmistakable intent to dedicate the street to the public).

¶ 25        Plaintiffs' reliance on *Sampson* is likewise misplaced. In that case, which involved whether a sewer easement had been dedicated to the public, the landowners did not argue the plat map and dedication language failed to dedicate the sewer easement; the dispute instead centered on whether the landowners, who claimed they did not know how the plat and dedication they signed came to be recorded, could plead ignorance to renege on the dedication. *Sampson*, 35 N.C. App. at 148-49, 240 S.E.2d at 502-503. *Sampson* simply stands for the proposition that a landowner who signs and records a plat map that dedicates an easement to the public cannot undo the dedication by claiming ignorance of the dedication language or recordation. *Id.* Defendant in this case occupies a different position from the landowners in *Sampson*, as it specifically asserts the Sand Dollar Shores plat map does not show, on its face, a public dedication of the Easement. *Sampson*'s holding has no bearing on this case.

¶ 26        *Smith* is similarly distinguishable. Just as in *Ocean Hill* and *Sampson*, the uncontroverted evidence in *Smith* showed a public dedication had occurred upon recordation and the landowners *did not contest* whether the facts showed a

dedication. 214 N.C. App. at 432-33, 714 S.E.2d at 855-56. And, as with *Ocean Hill* and *Sampson*, nothing in *Smith* supports the conclusion that a recorded plat containing a dedication results in a dedication of any listed easements as a matter of law, regardless of the actual language and express scope of dedication language.

¶ 27 A fourth case cited by Plaintiffs, *Emanuelson*, is also inapplicable. There, a dispute arose between a developer and a nearby landowner over the public or private nature of a road on a subdivision plat map. 49 N.C. App. at 419, 271 S.E.2d at 558. The developer conceded that it had offered the road for public dedication, but argued that it had not been properly accepted by a public authority. *Id.* at 419, 271 S.E.2d at 559. That case thus did not address the issue here: whether the language on the Sand Dollar Shores plat map shows an offer to dedicate the Easement.

¶ 28 Plaintiffs' remaining arguments seek to interpret and apply various statutes that have no bearing on whether the developer of Sand Dollar Shores intended to dedicate the Easement to the public, namely: (1) N.C. Gen. Stat. § 136-102.6, addressed *supra*; (2) the legislative findings section of the Coastal Area Management Act, N.C. Gen. Stat. § 113A-134.1(b) (2019), which simply discloses the legislature's desire to establish public accessways to the State's beaches; and (3) N.C. Gen. Stat. §§ 136-66.1, 160A-299, and 160A-301 (2019), which allow towns to spend funds on road improvements, close public roads and walks, and regulate parking. None of

those statutes abrogates the common law of dedication. Plaintiffs also rely on Dare County ordinances in effect at the time the plat map was recorded to assert the Easement was dedicated to the public as a matter of law upon recordation. But, as conceded at oral argument, those ordinances expressly provided that both public and private easements could be recorded. *See* Dare County Code § 18-2 (1975) (defining "Easement" as "[a] grant by the property owner for use by the public *or any person* of a strip of land for specified purposes" (emphasis added)).

¶ 29      We acknowledge that our holding means that the Town of Duck, as an incorporated municipality, lacks public beach access. The subdivision, Easement, and Defendant association predate the incorporation of the Town. The Town has not sought to establish a public beach access and generally maintains that all of the beach access locations within the town limits of Duck are located on private property. This Court must uphold these private property rights under the law. Though we hold their suit must be dismissed, Plaintiffs are not barred from the beach. They may, as suggested by counsel, negotiate for access with Defendant or, failing that, drive to nearby municipalities or any unincorporated areas in the county to the north and south that maintain public beach accesses.

### III. <u>CONCLUSION</u>

¶ 30      For the foregoing reasons, we reverse the judgment of the trial court and

remand with instructions to enter summary judgment for Defendant.

REVERSED AND REMANDED.

Judges TYSON and HAMPSON concur.